SEP 13 2024 PM3:27
FILED - USDC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 2 TARGET DEVICES, CURRENTLY LOCATED IN LAW ENFORCEMENT CUSTODY WITHIN THE DISTRICT OF CONNECTICUT | Case No. 3:24 mj826 (SDV) |
| | **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew Charpentier being first duly sworn, hereby depose and state as follows:

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since 2022. Upon successful completion of the 16-week DEA Basic Agent Training Academy in Quantico, I was assigned to the Bridgeport High Intensity Drug Trafficking Area Task Force ("Task Force"), which is comprised of personnel from the DEA, Connecticut State Police, Norwalk Police Department, Stamford Police Department, Stratford Police Department, Milford Police Department and the Danbury Police Department. Prior to joining the DEA, I was a Correctional Officer for the Bureau of Prisons for approximately three and a half years.

2.      During my time with DEA, I have participated in criminal investigations, including investigations into suspected narcotics trafficking. My participation in the investigations has included coordinating controlled purchases of narcotics; utilization and debriefing of confidential informants; conducting electronic and physical surveillance; analyzing various records pertaining to narcotics trafficking; testifying in Grand Jury; interviewing individuals and discussing with other members of law enforcement the manner in which narcotics traffickers obtain, finance, store, manufacture, transport and distribute controlled substances.

3.      Based on the above training and experience, I am familiar with the means, methods,

and equipment used by persons involved in the use, possession, transportation, distribution and sale of controlled substances, the motivation of such persons involved in these crimes, and the methods utilized to facilitate narcotics distribution.

4.      Based on my training and experience, I also am aware of the ways that persons involved in narcotics trafficking use cellular telephones in furtherance of their criminal activities and of the type of evidence typically found in such devices when used by drug dealers.

5.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am the co-case agent on the investigation which is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed herein.

6.      As a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on the following: (1) my personal participation in the investigation; and (2) information provided to me by Special Agents/Task Force Officers of the DEA in the Bridgeport Resident Office and by other investigators, including, most particularly, those with the Stamford Police Department's Narcotics and Organized Crime Unit ("SPD NOC").

7.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of and extraction of electronically stored information from the following: (1) one black Maxwest flip phone utilizing the number 475-268-9403 ("TARGET TELEPHONE 1"); (2)  a black Apple iPhone ("TARGET

TELEPHONE 2") (both target telephones are currently in law enforcement possession after their seizure from Miguel RODRIGUEZ-VELOZ ("RODRIGUEZ") a/k/a "Cuba"); and (3) the iCloud account miguelrodriguez1564@icloud.com (with the password "miguel0321" or "Miguel0321"), all listed in Attachment A.

8.       I am participating in the investigation of RODRIGUEZ, who was arrested on August 27, 2024 by SPD NOC based on evidence found during the execution of state search warrants. On that date, TARGET TELEPHONES 1 and 2 were seized from RODRIGUEZ. State investigators also seized more than seven kilograms of fentanyl from RODRIGUEZ's residence. On September 3, 2024, I filed a criminal complaint charging RODRIGUEZ with violations of Title 21, United States Code, Section 841 (Possession with Intent to Distribute to Distribute Controlled Substances) ("Charged Offenses"). This Court issued a federal arrest warrant based on that complaint.

## PROBABLE CAUSE

9.       In support of the aforementioned criminal complaint, I submitted an affidavit to this Court. A copy of that affidavit (hereinafter, the "Original Affidavit") has been attached as Exhibit 1 and incorporated herein.

10.      As set forth in the Original Affidavit, prior to the execution of the state search warrants on August 27, 2024, state investigators utilized a Confidential Informant ("CI-1") to purchase quantities of crack-cocaine from RODRIGUEZ on multiple occasions in July and August 2024. CI-1 has been working as a source for the Stamford Police Department for a period of months, providing information and services to investigators in exchange for financial compensation. Information provided by CI-1 has been both reliable and timely and has been corroborated by other investigative means. For each controlled purchase, CI-1 made contact with

3

RODRIGUEZ at TARGET TELEPHONE 1 to arrange the anticipated purchase of narcotics, including the date, time and meeting location. For each of the controlled purchases, CI-1 was surveilled by law enforcement who watched CI-1 meet with and conduct a narcotics transaction with RODRIGUEZ.

11.     Investigators with SPD NOC also received information and assistance from a second Confidential Informant ("CI-2") concerning RODRIGUEZ and his drug activities. CI-2 has worked with SPD NOC for a period of months in exchange for financial compensation, and the information and assistance of CI-2 has proven both reliable and valuable and has been corroborated by other information and investigative means.  CI-2 identified an iPhone with the number 781-579-0482 as a contact for RODRIGUEZ. CI-2 used that phone number to contact RODRIGUEZ to arrange drug transactions.

12.     Toll records of TELEPHONE 1 from August 5, 2024 to September 4, 2024 show communication with 781-579-0482, the suspected iPhone number. As noted above, both TARGET TELEPHONE 1 and 2 were found on RODRIGUEZ's person at the time of his arrest on August 27, 2024. At the time of the seizure, investigators immediately placed TARGET TELEPHONE 2 into airplane mode to prevent remote access to the device.

13.     I am aware through my check of agency databases that the number 781-579-0482, the suspected number for TARGET TELEPHONE 2 was found to be associated with RODRIGUEZ and was in contact with target numbers in a DEA investigation in New Jersey in 2023 into drug traffickers from the Dominican Republic.

14.     During the search of the Liberty Street residence on August 27, investigators found in the closet a notebook that contained various notations and appeared to be a ledger with names and phone numbers.    Among    the    notations    was    an    iCloud    account    –

miguelrodriguez1564@icloud.com – and what appeared to be a password, "miguel0321" or "Miguel0321." I believe this iCloud account is RODRIGUEZ's and indicates that he has an Apple device.[1]

15.    Based on my training and experience, I am aware that drug dealers often use multiple cellular devices in order to compartmentalize their activities and evade detection from law enforcement. Drug dealers will also use multiple phones to separate clients from associates, sources from customers, ensuring that if one phone is compromised, not all their contacts or information will be exposed or lost. Often, dealers will use flip phones, like TARGET TELEPHONE 1, for a certain type of customer, and other devices for larger customers, suppliers, co-conspirators or associates.

### INFORMATION REGARDING CELLULAR TELEPHONES AND THE REQUESTED WARRANT

16.    Based on my knowledge, training, and experience, I am aware that a mobile or cellular telephone, commonly referred to as a cell phone, are handheld wireless devices used for voice and data communication through radio signals.  A cell phone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cell phones offer a broad range of other capabilities. These capabilities include running software or applications; storing contact names and phone numbers in electronic address books, commonly referred to as a cell phone user's contacts; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates,

---

[1] Since the state arrest of RODRIGUEZ and the seizure of the target telephones, I have been taking various investigative steps to obtain and analyze information concerning the target telephones, including seeking and reviewing toll records, issuing administrative subpoenas, reviewing databases, conferring with officers with SPD NOC and federal agents, among other steps.  I also have been involved in the investigation of other matters, including the execution of search warrants.

appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cell phones may also include geo-location and GPS technology for determining the location of the device.

17.    Based on my training and experience, I know that when a cellular device acting as a camera is used to take a phonograph or video, the device will often store information beyond the photograph itself. This "meta data" can include, the size of the file, its location on the device, the time and date of the photograph or video, GPS coordinates for where the photograph or video was taken, whether and when it has been accessed or modified, what device took the photograph or video, and other properties or data regarding the photograph or video.

18.    I also am aware that cellular devices often have messaging apps, such as WhatsApp, Telegram, Signal, and others, that are encrypted. These apps are used by persons involved in the drug trade at least in part because they cannot be intercepted by law enforcement. But information from those apps can be found in the cell phone's data. Further, cell phone data can show social media platforms that have been used, including platforms that provide photos, videos, messages, contact information, location information, and other data with evidentiary value.

19.    I am further aware that data on Apple devices often is backed up on iCloud accounts, including photographs, email, contacts, messages, calendars, notes, and other content. The standard file backup and syncing service includes 5 GB of free online storage to anyone with an Apple ID, with additional storage available for a fee. Consequently, data that is or was on iPhones or other Apple devices often can be found on an iCloud account.

20.    As described above and in Attachment B, this application seeks permission to search and seize things that the TARGET TELEPHONES and the subject iCloud account might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that

electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.    Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

22.    It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search warrant. Further,

turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

23.     It is also requested that warrant be deemed executed once the TARGET TELEPHONES have been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## CONCLUSION

24.     Based on this information set forth in this affidavit as well as the Original Affidavit, I respectfully submit that there is probable cause to believe that the TARGET TELEPHONES and the subject iCloud account contains evidence of the Charged Offenses as specified in Attachment B.

25.     Because this warrant seeks only permission to examine devices already in law enforcement's possession and data that is held remotely, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

ANDREW CHARPENTIER
Digitally signed by ANDREW CHARPENTIER
Date: 2024.09.13 14:23:44 -04'00'

_____
Andrew Charpentier
Special Agent
Drug Enforcement Administration

Attested to by the applicant by telephonic means in accordance with the requirements of Fed. R. Crim. P. 4.1 this 13th day of _September_, 2024.

_____
THE HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

8

**<u>EXHIBIT 1</u>**

Affidavit of Andrew Charpentier, dated September 2, 2024

SEP 3 2024 AM9:38
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN THE MATTER OF THE ARREST OF
MIGUEL RODRIGUEZ-VELOZ,
a/k/a "Cuba"

Case No. 3:24 mj 763 (SDV)

**Filed Under Seal**

## AFFIDAVIT

I, Andrew Charpentier being first duly sworn, hereby depose and state as follows:

1.     I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since 2022. Upon successful completion of the 16-week DEA Basic Agent Training Academy in Quantico, I was assigned to the Bridgeport High Intensity Drug Trafficking Area Task Force ("Task Force"), which is comprised of personnel from the DEA, Connecticut State Police, Norwalk Police Department, Stamford Police Department, Stratford Police Department, Milford Police Department and the Danbury Police Department. Prior to joining the DEA, I was a Correctional Officer for the Bureau of Prisons for approximately three and a half years.

2.     During my time with DEA, I have participated in criminal investigations, including investigations into suspected narcotics trafficking. My participation in the investigations has included coordinating controlled purchases of narcotics; utilization and debriefing of confidential informants; conducting electronic and physical surveillance; analyzing various records pertaining to narcotics trafficking; testifying in Grand Jury; interviewing individuals and discussing with other members of law enforcement the manner in which narcotics traffickers obtain, finance, store, manufacture, transport and distribute controlled substances.

3.     Based on the above training and experience, I am familiar with the means, methods, and equipment used by persons involved in the use, possession, transportation, distribution and

1

sale of controlled substances, the motivation of such persons involved in these crimes, and the methods utilized to facilitate narcotics distribution.

4.    Based on my training and experience, I am also aware of the ways that persons involved in narcotics trafficking use cellular telephones in furtherance of their criminal activities and of the type of evidence typically found in such devices when used by drug dealers.

5.    I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am the co-case agent on the investigation which is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed herein.

6.    As a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on the following: (1) my personal participation in the investigation; and (2) information provided to me by Special Agents/Task Force Officers of the DEA in the Bridgeport Resident Office and by other investigators, including, most particularly, those with the Stamford Police Department's Narcotics and Organized Crime Unit ("SPD NOC").

7.    I submit this affidavit in support of a criminal complaint and arrest warrant for Miguel RODRIGUEZ-VELOZ ("RODRIGUEZ"), a/k/a "Cuba," date of birth known to law enforcement, charging him with a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(b), Possession with Intent to Distribute Controlled Substances – fentanyl, crack cocaine, and cocaine.

2

8.     Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint, it does not include all information gathered to date by the DEA and other law enforcement entities in relation to this investigation. Rather, it contains information that I believe establishes probable cause to believe that RODRIGUEZ committed violations of the federal narcotics statutes.

## THE TARGET TO BE ARRESTED

9.     The DEA is investigating RODRIGUEZ. For the reasons set forth below, there is probable cause to believe RODRIGUEZ is involved in fentanyl, cocaine, and crack cocaine trafficking in Connecticut and elsewhere, in violation of federal narcotics laws, including Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Controlled Substances.

10.     RODRIGUEZ has the following criminal history: (a) May 31, 2024 conviction in the State of Connecticut for Possession of Narcotics with Intent to Sell; $2,500 fine; (b) February 28, 2018 conviction in the State of Massachusetts for Trafficking 36 or more grams of Heroin/Morphine/Opium into MCI Cedar Junction; 5 to 7 years of imprisonment.

## PROBABLE CAUSE

11.     Since approximately July 2024, Special Agents of the DEA and investigators with SPD NOC have been investigating RODRIGUEZ for the distribution of narcotics throughout Stamford, Connecticut. Investigators received information from various sources concerning RODRIGUEZ's drug trafficking activities. These sources stated that RODRIGUEZ lived at an apartment on 26 Main Street in Stamford, had another location he used as a stash house on the west side of Stamford, and drove a black Honda SUV to conduct transactions. The drugs he was allegedly trafficking included crack cocaine and heroin. These sources had provided investigators with reliable information in the past.

3

12.     After receiving this information, investigators conducted surveillance of RODRIGUEZ during July and August 2024 and observed him using two different locations in Stamford, the residence located at 26 Main Street, #11G and the residence located at 94 Liberty Street Apt. #6. The Liberty Street residence is located on the west side of Stamford. Investigators on surveillance observed RODRIGUEZ access each of the above-mentioned residences with a key. Members of the SPD NOC directed sources to make multiple controlled purchases of narcotics, specifically, crack cocaine, from RODRIGUEZ in July and August. These buys were directed and observed by law enforcement. After certain of the buys, RODRIGUEZ left the meet with the source and was seen driving to either the Main Street or the Liberty Street residence. He drove a black Honda Pilot, CT registration BJ93059. Over the course of surveillance, RODRIGUEZ was seen multiple times per day at the Main Street residence and at the Liberty Street residence. He was also observed traveling to different locations in Stamford, where he engaged in quick meetings with various unidentified individuals, consistent with drug transactions, in my experience. After these quick meetings, RODRIGUEZ was seen returning to either the Main Street or the Liberty Street location before going to other places to meet with additional people.

13.     Based on my training and experience, I believe both residences were utilized by RODRIGUEZ to store, package and distribute narcotics within Stamford, Connecticut.

14.     On August 27, 2024, SPD NOC executed state search warrants for RODRIGUEZ's person, the Main and Liberty Street residences, and the Honda Pilot. At approximately 2:50 p.m. SPD NOC Officers detained RODRIGUEZ without incident on Liberty Street. On RODRIGUEZ's person, officers found approximately 1.2 grams of powder cocaine, 2.9 grams of crack cocaine, 4.0 grams of fentanyl, and $10.00 of US currency. A key was also seized from RODRIGUEZ at the time, believed to access 94 Liberty Street, Apt. #6.

4

15.    During the execution of the state search warrant at the Liberty Street residence, officers of the SPD NOC seized approximately 112.7 grams of suspected cocaine (field-tested positive for cocaine), 7,962 grams of suspected fentanyl (field-tested positive for fentanyl), scales, packaging materials, other paraphernalia, and $2,575 in US Currency from RODRIGUEZ's bedroom. The exact location of RODRIGUEZ bedroom was shown to SPD NOC by the owner of 94 Liberty Street complex, and the key used to access the residence was the one found on RODRIGUEZ's person.

16.    During the execution of the state search warrant on 26 Main Street #11G, Stamford Connecticut SPD NOC seized approximately 2.0 grams of suspected crack cocaine (field-tested positive for crack cocaine). No contraband was found in the Honda Pilot.

17.    In total, approximately 7,966 grams of fentanyl, 114 grams of powder cocaine, and 5 grams of crack cocaine, along with narcotics-related paraphernalia, were seized from RODRIGUEZ and his two residences on August 27, 2024.

18.    Based upon the information above, I respectfully submit that there is probable cause to believe, and I do believe, that Miguel RODRIGUEZ-VELOZ has violated Title 21, United States Code, Section 841 (a)(1), that is, Possession with Intent to Distribute Controlled Substances, specifically, fentanyl, cocaine, and crack cocaine. I respectfully seek the issuance of an arrest warrant based on the accompanying criminal complaint.

19.    I further request that the Court order that all papers in support submitted in support of the requested warrant be sealed until further order of the Court. These documents relate to an ongoing criminal investigation, parts of which are neither public nor known t]o all of the targets of the investigation. Further, disclosure of these materials at this time could lead to the destruction of evidence and hinder law enforcement's ability to pursue the investigation of related targets.

5

Furthermore, the disclosure of this affidavit and the other documents submitted with it, could endanger the lives of persons involved in this investigation. Accordingly, there is good cause to seal these documents.

Respectfully submitted,

Andrew Charpentier
Special Agent
Drug Enforcement Administration

Subscribed to and sworn before me this 3rd day of September, 2024.

THE HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

6

## ATTACHMENT A

### Property to be Searched

The property to be searched includes the following: (1) a Maxwest flip-phone ("TARGET TELEPHONE 1"); (2) a black Apple iPhone ("TARGET TELEPHONE 2"), both seized from RODGRIGUEZ at the time of his arrest on August 27, 2024 and both currently located in Stamford Police Department Evidence Storage; and (3) the iCloud account miguelrodriguez1564@ icloud.com ("The Subject iCloud account") that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.

**TARGET TELEPHONE 1**



**TARGET TELEPHONE 2**



## ATTACHMENT B

### Particular Things to be Seized

As to the TARGET TELEPHONES:

All records, information, photographs, images, videos, call logs, contacts, text messages, messaging apps, social media apps, internet browsing history, and calendars, in any format, including any associated metadata, as well as geo-location information, that constitute evidence of a potential violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1) (Possession with Intent to Distribute and Distribution of Fentanyl) (the "Charged Offenses") for the time period of July 1, 2024 through August 27, 2024 including but not limited to the following:

1. the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of the TARGET TELEPHONES;
2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the TARGET TELEPHONES;
3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;
4. any and all records, however created or stored, which tend to demonstrate ownership and use of the TARGET TELEPHONE, and identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal files, and photographs of persons contained in the TARGET TELEPHONE;
5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the TARGET TELEPHONE, such as passwords, sign-on codes, and program design;
6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;
7. saved searches, locations, and route history in the memory of the TARGET TELEPHONE;
8. internet browsing history, to include, internet searches in the memory of the TARGET TELEPHONE;
9. images and videos in the memory of the TARGET TELEPHONE;
10. Call/text/messaging data and data from social media platforms.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described TARGET TELEPHONES may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.

It is further authorized that the officers executing this warrant may send the TARGET TELEPHONES to a commercial vendor outside of Connecticut to permit the analysis called for herein.

As to the Subject iCloud account:

**I.      Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for the account or listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

        c.      The contents of all emails associated with the account **from July 1, 2024 to present,** including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

        d.      The contents of all instant messages associated with the account **from July 1, 2024 to present,** including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

        e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

        f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

        g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

        h.      All records pertaining to the types of service used;

        i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

        j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**I.**      **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 841 involving RODRIGUEZ during the period of July 1, 2024 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Apple in order to locate the things particularly described in this Warrant.

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.